IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **SHERRY LEE BURNEY,** | : | |
| **Plaintiff** | : | |
| v. | : | 5:04-CV-437 (WDO) |
| **PATTI H. GRIMSLEY, et al.,** | : | |
| **Defendants** | : | |

## ORDER

Plaintiff, a Caucasian former employee of the Clerk of Court for the Twiggs County Superior Court, filed this case alleging wrongful termination. Plaintiff claimed she was terminated because she was having a romantic relationship during her period of employment with a Twiggs County inmate who is African-American. The Defendants Plaintiff initially named were the Clerk of Court, Patti Grimsley, and the County "d/b/a/" the Twiggs County Board of Commissioners. After a partial summary judgment in the Defendants' favor, the only remaining Defendant is Defendant Grimsley in her official capacity. The following legal and factual findings made in the Court's previous partial summary judgment order are relevant to the remaining issues.

The person with whom Plaintiff was romantically associated during her employment in the Clerk's office, Clifford Burney, was a frequent inmate at the Twiggs County jail during a substantial portion of Plaintiff's last year of employment (2003). During some of the time Burney was incarcerated he was a trustee. The trustees were occasionally in the Clerk's

1

Office emptying the trash and refilling the ice.  At one point, the inmate was found with Plaintiff's cellular phone in his cell, contrary to the jail's policy of *not* allowing cellular phones in the jail cells.  On another occasion, the inmate was stopped driving Plaintiff's car during which a crack pipe was found in the car.  Defendant Grimsley contended Plaintiff's termination was based on excessive absenteeism (45 days in the last year she was employed), repeated instances of the Plaintiff failing to inform Grimsley when she would return to work, Plaintiff's mishandling of two bank deposits, Plaintiff's failure to keep court records properly indexed and up to date and her instances of insubordination.

Based on these facts, the Court held that public employees have more limited rights regarding the individuals with whom they associate, even those protected "intimate" relationships, based on the function of their jobs in the public sector.  Plaintiff's loyalty to her former employer and the ability to keep confidences were essential to the proper performance of the functions of the Clerk's office.  Plaintiff very likely had access to and at least knowledge of the jail's security procedures.  Plaintiff mostly handled the criminal filings, including taking and recording fines.  The likelihood that someone in the Clerk's office would have more intelligence on what was going on in the jail as far as procedures and security measures weighed very heavily in the Defendants' favor.  The deposition testimony revealed that the County employees were in frequent contact with each other, particularly law enforcement officials and employees in the Clerk's office.  The evidence clearly established that Plaintiff's relationship could and did interfere with the business of the Clerk's office. Plaintiff acknowledged that Grimsley was very upset about the relationship with the inmate

and had never "run across a situation where she had to deal with an employee being involved with an inmate."[1] Grimsley's testimony reveals that she would have terminated Plaintiff regardless of her relationship with the inmate based on Plaintiff's performance issues.

The Court also previously held that Defendants reasonably believed that Plaintiff's relationship with the inmate posed a threat to the information kept in and procedures of the Clerk's office and the security of the jail, and thus the security of the public in general. The county has a valid interest in prohibiting its employees who work for the court from associating with inmates based on the county's need, in the law enforcement context, to employ persons who act with good judgment and to avoid potential conflicts of interest. There was an extraordinary need to ensure no confidential information was leaked by the Plaintiff to her boyfriend the inmate and to ensure that he received no special information or treatment because of Plaintiff's position, which would have induced extreme unrest among other inmates. Plaintiff and her boyfriend, and now spouse, would tend to possess a higher degree of loyalty to each other than to their superiors and would very likely discuss workplace matters with one another, even matters that Plaintiff's superior had designated confidential. Thus, as a matter of common experience it was objectively reasonable for Grimsley, on behalf of the county and its citizens, to be concerned about confidentiality and security in the Clerk's office when Plaintiff was having an intimate relationship with a frequent Twiggs County inmate. In this case, the public employer's interest weighed heavily

---

[1] Pl's. Dep. at 98.

on the Pickering scale because Plaintiff's exercise of her right of "freedom of association" compromised her loyalty and confidentiality to Grimsley and the court as a whole. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968). Accordingly, Plaintiff failed to establish that her termination infringed her First Amendment right to freedom of association with an individual who was an inmate during the period of her employment. Based on these factual and legal findings, the Court entered a partial summary judgment in Defendants' favor. Plaintiff has two remaining claims: that she was terminated for dating an African-American man - a Title VII retaliation claim - and that she was treated "less favorably" than other employees in the Clerk's Office - an Equal Protection claim.

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) (citation omitted). "Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." Id. (citation omitted).

Plaintiff failed to establish even a prima facie case of discrimination. Plaintiff's "statutorily protected expression" in this instance was dating an individual of a different race. She was terminated and thus did experience an "adverse employment action." However, Plaintiff failed to establish "some causal relation" between her relationship with an African-

American and her termination.

Plaintiff had serious performance issues documented in the record, and many were admitted to by the Plaintiff in her deposition. Plaintiff argues that other employees had problems yet were not terminated and Defendant's reasons for her termination were pretext. However, the examples given by Plaintiff do not establish pretext. For instance, Plaintiff compares herself to another lady in the office who dated a police officer but was not terminated. There is a world of difference between dating a police officer and dating an inmate, the two cannot serve as legal comparisons. Second, Plaintiff argues that another employee lost $90 and was not terminated while one of the reasons given for Plaintiff's termination was the mishandling of several bank deposits from the trust account. Again, Plaintiff fails to offer a legitimate, legal comparison. Losing $90 once cannot be legally compared to mishandling several hundred dollars worth of deposits on multiple occasions. Third, Plaintiff argues Defendant Grimsley did not have a problem with her performance until she started dating an African-American inmate. This argument fails because Grimsley testified that Plaintiff's absenteeism and other issues developed *after* Plaintiff began dating an inmate. Further, there is no temporal proximity to Grimsley's learning of Plaintiff's relationship with the inmate and Plaintiff's termination. There in fact was an eight-month lapse of time between when Grimsley first learned of the relationship and when Plaintiff was terminated. Plaintiff therefore failed to establish a prima facie case of racial discrimination and failed to rebut the legitimate, non-discriminatory reasons given for her termination.

The last remaining claim is Plaintiff's Equal Protection Claim - that she was treated

differently from other employees in the office because of her relationship with an African-American inmate. First, as explained above, Plaintiff failed to offer a legitimate legal "comparator" with whom the Court could analyze an Equal Protection claim. Second, Plaintiff's Equal Protection claim is based on the same facts and legal arguments as her Title VII claim, thus she is seeking a parallel remedy to the Title VII claim. <u>Hardin v. Stynchcomb</u>, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982). The Equal Protection claim is therefore dismissed for the same reasons the Title VII claims are dismissed.

Base on the foregoing, Defendant Grimsley's motion for summary judgment is GRANTED and judgment shall be entered in her favor.

**SO ORDERED this 16th day of November, 2006.**


**S/
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**